Mary L. Spehar, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 1, 1982, before President Judge CRUMLISH and Judges ROGERS and BLATT, sitting as a panel of three.

*Bradley Davis Miller, Wisniewski and Miller,* for petitioner.

*Phillip Rosenthal,* with him *James S. Marshall,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, July 7, 1982:

This is an appeal from an adjudication of the Department of Public Welfare (DPW) which affirmed the decision of the Wernersville State Hospital (Hospital) denying payment to the claimant of a claim filed pursuant to Act 534.[1] The claim was for salary lost and medical expenses incurred as the result of an injury to the claimant's right knee suffered during the course of her employment when she was kicked by a patient.

On February 2, 1979, the claimant, a Licensed Practical Nurse I, was allegedly injured as the result of a fall she sustained when a patient at the Hospital kicked her feet out from under her. On the day of the accident, her immediate supervisor documented the incident on the chart of the offending patient and also assisted the claimant in preparing an accident report. The Hospital personnel office never received this report, however, and first became aware of the incident over six months later, on August 29, 1979 when it received a letter from the claimant alleging that she had sustained an injury to her right knee and

---

[1] Act of December 8, 1959 (Act), P.L. 1718, *as amended,* 61 P.S. §951, provides, *inter alia,* that:

[A]ny employee of a State mental hospital . . . who is injured during the course of his employment by an act of any inmate or any person confined in such institution . . . . shall be paid . . . his full salary . . . [throughout] the disability arising therefrom . . . [as well as] [a]ll medical and hospital expenses incurred in connection [therewith]. . . .

hip as a result of having been kicked by a patient. The Hospital then solicited and obtained an internal Unusual Incident Report, in which the claimant's unit director stated that the progress note on the patient's chart indicated that the claimant had been kicked by the patient on February 2, 1979 and had then lost her balance and fallen to the floor, landing on her left hip. The report also contained a statement by the supervisor that the claimant had removed the report forms from the appropriate internal Hospital mailbox on February 3, 1979, the supervisor having placed them there the night before, and had "put them in Library 3-11 drawer." The statement continued, "Apparently she choose [sic] not to submitte [sic] them. Stating, that she felt OK at that time." The Hospital subsequently prepared an Employer's Report of Occupational Injury in which it stated that the claimant had fallen on and bruised her left hip on the date in question. On June 19, 1980 it denied the claimant's request for benefits under Act 534, stating that her hospital discharge summary and the medical reports of her treating physicians were equivocal and inconclusive. On appeal, the hearing officer denied benefits and this appeal followed.

The claimant argues that, in view of the testimony of the orthopedic surgeon who treated her, the hearing officer erred in concluding that she had failed to produce evidence that she had in fact injured her right knee at the time and in the manner alleged.

It is well-settled, of course, that where as here no obvious connection exists between a claimant's injury and the alleged cause thereof, unequivocal medical evidence, not based on mere possibilities, must be produced by the claimant to establish the relationship. *Trumpikas v. Department of Public Welfare*, 50 Pa. Commonwealth Ct. 130, 412 A.2d 218 (1980). More-

over, medical testimony which is less than positive or based merely on possibilities does not constitute legally competent evidence. *Westmoreland Casualty Company v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978). At the hearing, the claimant's physician answered "Yes" when asked if it was his opinion, with reasonable medical certainty, that the claimant's knee problem came about "directly in connection with the injury she sustained on February 2nd." However, when questioned by the Hospital personnel director about his letter of February 15, 1980 in which he had said that he "was unable to state with any uncertainty [sic] right now whether there was any relationship" between the claimant's knee problem and the February 2, 1979 injury, he replied:

> When the problem of her knee persisted then I went back and kind of grilled her again about it . . . and that it was when it became quite apparent that inspite [sic] of the fact that it was not too clear the first time when I saw her that she really did not have any problem prior to this is that everything *seemed* to go back to that day when she fell and so I *probably* would at this point not go along with that particular line I have on that letter, because everything *seems* to date back that time when she had that accident. (Emphasis added.)

An absence of explicit testimony linking an injury to a disability will not preclude recovery, of course, where the examiner " 'who personally heard the medical evidence has determined that the requisite causation was present *and the record as a whole supports the determination.*' " *Cooper-Jarrett, Inc. v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 204, 208, 423 A.2d 52, 55 (1980) (emphasis

added) (quoting *Stone Container Corp. v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 384, 387, 413 A.2d 17, 19 (1980)). Here, however, the hearing examiner determined that the record did not support a finding of injury to the claimant's right knee. He also found that not only had she failed to report the incident to her department head but also that there was conflicting testimony as to her ultimate disposition of the accident report which she had filled out but which the personnel department had never received. Clearly, the Hospital did not receive notice of the incident, either from its supervisory personnel or from the claimant, until it received the claimant's letter on August 29, 1979 alleging a work-related injury to her right knee. While there is no disagreement that the claimant did indeed sustain a fall as a result of being kicked by a patient, therefore, the subsequent internal hospital reports mention only an injury to her left hip. Further, the claimant produced no other proof to corroborate her assertion of injury to her *right knee* either by the testimony of the eye witnesses, as to whose presence she had testified, or otherwise.

Questions of credibility, and of the probative value to be assigned the evidence are for the finder of fact and not for this Court, *City of Williamsport v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 618, 423 A.2d 817 (1980), and, in the performance of his fact-finding task, the factfinder is responsible for resolving conflicts in the evidence, including those resulting from medical testimony. In so doing, he is free to "accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Bowes v. Inter-Community Action, Inc.,* 49 Pa. Commonwealth Ct. 612, 618, 411 A.2d 1279, 1281 (1980). Moreover, "[t]he opinion of a medical

expert is evidence. If the fact finder chooses to believe it, he can find as a fact what the expert gave as an opinion." *McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971) . Here, however, the fact-finder determined that, despite the physician's testimony, the record taken in its totality did not support a determination that the disability to the claimant's *right knee* was caused by her fall on February 2, 1979.

The claimant contends further that the hearing examiner erred in holding her responsible for the final destination of the Occupational Injury Report when the regulations place primary responsibility on the supervisor for reporting injuries to the department head. Section 8453.41 of the DPW Manual provides, however, that "[e]*mployees* will (a) report the incident and injury to the supervisor *and* head of department," (emphasis added) while Section 8453.42 sets forth the direct and distinct reporting responsibilities of the supervisor, who is required not only to report an injury sustained by an employee to the department head and to the personnel office but also to "insure that the employee's report of occupational injury or disease Form ODIC-344, is prepared and delivered to the personnel office. . . ." The claimant testified that both she and her supervisor prepared incident reports on the day of the incident and that the next day "[w]e were looking at it . . . and we both put it back in the mailbox and from there I knew absolutely nothing about the report." It is clear from the claimant's own testimony, therefore, that the supervisor undertook to discharge at least some of a supervisor's responsibilities in this regard, including insuring preparation and delivery of the appropriate report, but whatever reporting duties the supervisor had under Section 8453.42 did not relieve the employee of *her own* responsibility under Section 8453.41 to re-

port an injury both to the supervisor *and* to the department head. The claimant, however, has not asserted that she ever notified her department head, and there is conflicting testimony in the record as to whether or not she ultimately submitted her own accident report to anyone except her supervisor.

The claimant objects also to several other findings of fact asserting, too, that she was deprived of due process of law because neither the supervisor nor the witness whose report was admitted into evidence "over the objection of the appellant's counsel"[2] was made available for examination as required under Section 8453.594 of the DPW Manual which provides:

Document for use in appeal case.

Staff members who participate in the case shall be made available to the counsel to appear as witnesses. All concerned must take an active part in appeal cases.

This provision, however, assures merely the *availability*, not the presence, of witnesses, and it is clear that the claimant has not argued that she ever sought to call, or was ever impeded in calling, these persons as witnesses.

We will, therefore, affirm the Board's decision.

## ORDER

AND Now, this 7th day of July, 1982, the order of the Department of Public Welfare in the above-captioned matter is affirmed.

Judge MENCER did not participate in the decision in this case.

---

[2] When the incident report was introduced into evidence at the hearing, the claimant's attorney said, "I would object to this as not being the best evidence, *however, I will still let it in.* My objection is the fact that if these people are available to testify, I would rather have them here to testify than a document I can't cross-examine *but I will leave it at that.*