# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heartland Employment Services, LLC, :
                      Petitioner :
                      :
       v. : No. 1137 C.D. 2018
                      : Submitted: January 4, 2019
Workers' Compensation Appeal :
Board (Toth), :
                    Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                 **FILED: February 14, 2019**

Heartland Employment Services, LLC (Employer) asks whether the Workers' Compensation Appeal Board (Board) erred in affirming an order of a Workers' Compensation Judge (WCJ) that granted George Toth's (Claimant) claim petition seeking ongoing indemnity benefits. Employer asserts the workers' compensation authorities erred in granting Claimant's claim petition and awarding indemnity benefits because they applied the incorrect burden of proof and because the record lacks substantial, competent evidence to support a determination that Claimant sustained a work-related disability. Upon review, we affirm.

## I. Background

In October 2014, Employer issued a medical-only notice of temporary compensation payable (NTCP) for a low back strain Claimant suffered in September 2014. Two months later, Employer issued a medical-only notice of compensation payable (NCP).

About six months later, Claimant filed a claim petition alleging he suffered a low back injury in September 2014. Claimant alleged that he stopped working on December 5, 2014. He sought ongoing total indemnity benefits from that date forward. Employer filed an answer in which it denied the material allegations.[1] Hearings ensued before a WCJ.

Before the WCJ, Claimant, a registered nurse (RN), testified he worked for Employer as an RN Supervisor in a long-term care, short-term care and rehabilitation facility. His position included lifting patients who weighed between 90 and 350 pounds, with assistance. In September 2014, Claimant caught a patient who began to fall, and he suffered a low back injury. Claimant indicated he "felt something pop" and began to experience pain in his low back about an hour after the incident. WCJ's Op., 9/5/17, Findings of Fact (F.F.) No. 3(a). He reported his injury and sought medical treatment. Claimant subsequently returned to light duty work. In November 2014, while passing medication and leaning on a cart, Claimant "felt another pop in his back" and experienced severe pain in his low back, which resulted in an emergency room visit that evening. Id.

Claimant testified he continued to work in his light duty position, which required him to constantly bend and manually lift. In December 2014, Claimant again experienced severe back pain and was required to return to the emergency room. Claimant was then referred to pain management. Claimant indicated he informed Employer's scheduler that he would be off work until he

---

[1] Employer also filed a termination petition, alleging Claimant fully recovered from his work injury, which was ultimately denied. Employer does not challenge the denial of its termination petition in this appeal.

was seen by a pain management physician.  Claimant was removed from the schedule; he subsequently received a notice from Employer terminating his employment for a "no call [off]-no show" as of December 8, 2014.  F.F. No. 3(b).

Claimant later began obtaining pain management care.  At the time of his testimony in September 2015, Claimant used pain medication and was considering a pain stimulator.  He did not believe he could return to work.[2]

Claimant again testified before the WCJ in April 2016.  At that time, he indicated he was treating with Daniel Altman, M.D., a board-certified orthopedic surgeon (Claimant's Orthopedist).  Claimant stated it was recommended that he have a pain stimulator implanted for pain management.  He also indicated he received Morphine three times daily.  Additionally, Claimant underwent physical therapy, and he received a back brace.  He testified the overall condition of his back worsened since his prior testimony.  Claimant did not feel capable of returning to his time of injury employment.

Claimant testified before the WCJ a third time in April 2017.  At that time, he denied a recent history of preexisting back pain.  Claimant did have a prior history of back problems and was off work for approximately three months in 1993.  He agreed that he previously received Vicoprofen and Neurontin for complaints of bilateral hip pain and leg cramps and because of numbness, tingling, and pain in his lower leg.  Claimant stated that his family physician referred him to

---

[2] Claimant also indicated he received $894 in biweekly unemployment compensation benefits.

3

a rheumatologist, and this condition improved since June 2014. Claimant further explained this condition was different from the pain caused by the work injury. The work injury caused severe lower lumbar pain radiating down his right leg and into his mid-thigh as well as into his left leg on rare occasions. Claimant testified that, since his prior testimony, he had a spinal cord stimulator implanted, which improved his overall condition. However, more recently, his pain level increased.

In support of his claim petition, Claimant presented the deposition testimony of his Orthopedist, who initially examined Claimant in December 2015. Based on his examination, Claimant's history, and a review of numerous diagnostic tests, Claimant's Orthopedist diagnosed L4-5 spondylolisthesis. He noted Claimant's most recent MRI revealed narrowing and stenosis at L4-5. Further, Claimant underwent an EMG study that showed evidence of a right S1 nerve root irritation or radiculopathy. Claimant's Orthopedist opined that his physical examination was consistent with the findings on diagnostic tests.

Claimant's Orthopedist next examined Claimant three months later. He noted Claimant underwent additional therapy without improvement. He also recommended Claimant undergo a CT myelogram, a more extensive test. The CT myelogram revealed a right paracentral disc protrusion at L5-S1 with encroachment of the right S1 nerve root. It also revealed retrolisthesis of the L2 on L3 vertebrae. Claimant's Orthopedist reviewed Claimant's pain management records as well as at least two of Claimant's most recent MRI films and the CT myelogram. Claimant's Orthopedist indicated his review of Claimant's medical records and diagnostic tests were consistent with his opinions. He noted that

several physicians indicated Claimant had back pain and right leg radiculopathy after the work injury. Claimant's Orthopedist found no history that Claimant had any significant back pain or radiculopathy prior to his September 2014 work injury.

On cross-examination, Claimant's Orthopedist agreed that spondylolisthesis was a degenerative condition, but he stated it can be aggravated. Claimant's Orthopedist further indicated he did not find it surprising that Claimant had a preexisting history of tingling in his bilateral lower extremities because Claimant had a history of diabetes. He also stated it was not surprising that Claimant subsequently experienced popping in his back and increased low back pain after the work injury with the underlying radiculopathy and spondylolisthesis. Claimant's Orthopedist opined Claimant was unable to return to his *time of injury* position. He deferred to a rehabilitation physician for a full, formal assessment of any modified work capabilities.

Claimant also presented the deposition testimony of Maryanne Henderson, D.O., a board-certified physical medicine and rehabilitation physician (Claimant's Physiatrist). Claimant's Physiatrist initially examined Claimant in October 2015. In addition to her physical examination, Claimant's Physiatrist reviewed numerous records and reports regarding Claimant's treatment, including an EMG study and a report of a CT myelogram. Claimant's Physiatrist indicated that, at the time of Claimant's initial examination, he provided a history of the onset of low back pain in September 2014 while at work. He also complained of pain radiating down his right leg. Claimant's Physiatrist indicated Claimant

underwent an EMG study that revealed right S1 level radiculopathy. An MRI performed in June 2015 revealed a small midline herniation at L4-5. Claimant's Physiatrist diagnosed low back pain with S1 radiculopathy as a result of the September 2014 work injury. She opined Claimant was disabled from his *time of injury* position.

In opposition, Employer presented the deposition testimony of William J. Bookwalter, M.D. (Employer's Physician), who performed an independent medical examination of Claimant in August 2015. Based on his examination, Claimant's history, and his review of medical records, Employer's Physician opined Claimant suffered a lumbar strain as a result of the work incident. He further opined Claimant fully recovered from that injury as of the time of his examination. Employer's Physician disagreed with Claimant's Orthopedist's opinion that Claimant suffered L4-5 spondylolisthesis.

Ultimately, the WCJ made the following dispositive findings (with emphasis added):

> a. [Claimant] sustained an injury in the course of his employment on September 14, 2014, in the nature of low back pain with resulting right leg radiculopathy. Claimant has not fully recovered from said work injury. In so concluding, this Judge accepts as credible the testimony of [Claimant] and the opinions of [Claimant's Orthopedist and Claimant's Physiatrist];
>
> b. In finding the testimony of [Claimant] to be credible and persuasive, this Judge notes she was able to personally observe his demeanor on multiple occasions. Furthermore, this Judge finds his testimony to be internally consistent and straightforward. Finally,

6

Claimant's testimony regarding his continued complaints after the work injury are supported by the medical opinions of [Claimant's Orthopedist and Claimant's Physiatrist], whom this Judge also finds as credible;

c. This Judge finds the opinions of [Claimant's Orthopedist and Claimant's Physiatrist] to be more credible and persuasive than those of [Employer's Physician]. In so concluding, this Judge initially notes that both [Claimant's Orthopedist and Claimant's Physiatrist] have examined Claimant on multiple occasions. Both physicians provided logical and concrete explanations as to why they concluded the work injury was the cause of Claimant's right leg radiculopathy. In particular, this Judge notes [Claimant's Orthopedist and Claimant's Physiatrist's] emphasis on Claimant's objective diagnostic tests specifically the CT myelogram and the EMG which support their finding of radiculopathy. This Judge also specifically notes that [Claimant's Orthopedist] indicated that his review of the EMG did not reveal any evidence of diabetic myelopathy but did reveal right-sided radiculopathy. Additionally, his review of the CT myelogram revealed an encroachment of the right S1 nerve root. Therefore, wherever the opinions of [Employer's Physician] conflicts [sic] with those of [Claimant's Orthopedist and Claimant's Physiatrist], his opinions are rejected;

d. This Judge finds Claimant was totally disabled from his time of injury position at the time of his termination. This Judge finds Claimant's testimony credible that he had returned to modified work, had an increase in pain due to the work injury where he sought treatment at the [emergency room] and was told to remain off work until he was able to secure treatment through pain management. Claimant indicated he made [Employer] aware of his circumstances and he was taken off the schedule and thereafter terminated for a no call off/no show. Employer presented no evidence to contradict Claimant's testimony that he notified Employer that he would not be reporting to work due to the work injury. This Judge finds said termination without cause. Consequently, this Judge finds there was no modified

7

> work made available to Claimant after his termination on December 8, 2014. Consequently, this Judge finds Claimant is entitled to total disability benefits beginning December 8, 2014 and continuing into the future.

F.F. Nos. 7(a)-(d).

Based on these findings, the WCJ granted Claimant's claim petition, concluding Claimant established he sustained low back pain with right-side S1 radiculopathy as a result of the September 2014 work injury. The WCJ further determined Claimant did not fully recover from that injury. As a result, the WCJ awarded Claimant ongoing total indemnity benefits beginning December 8, 2014. Employer appealed to the Board.

The Board affirmed, explaining (with emphasis added):

> When a claimant's employment is terminated for post-injury misconduct, the employer bears the burden of proving that a position would have been available but for circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith. [Vista Int'l Hotel v. Workers' Comp. Appeal Bd. (Daniels), 742 A.2d 649 (Pa. 1999)]. The WCJ credited Claimant's testimony indicating that he notified [Employer] that he would be out of work briefly due to the work injury, and that his employment was subsequently terminated as of December 8, 2014. She noted that [Employer] did not present any evidence to contradict Claimant's testimony.

> Whether a claimant's employment was terminated for conduct evidencing a lack of good faith is a question of fact for the WCJ. Second Breath [v. Workers' Comp. Appeal Bd. (Gurski), 799 A.2d 892 (Pa. Cmwlth. 2002)]. The WCJ found that Claimant did not act in bad faith, and that work within his restrictions was not available after December 8, 2014. Claimant's testimony, found credible

8

by the WCJ, is substantial evidence supporting that finding. We determine no error.

Bd. Op., 7/24/18 at 4. Employer now petitions for review to this Court.[3]

## II. Issue

On appeal,[4] Employer argues the WCJ and the Board erred in granting Claimant's claim petition and awarding indemnity benefits because they applied the incorrect burden of proof and the record lacks substantial, competent evidence to support a determination that Claimant sustained a work-related disability.

## III. Discussion
### A. Contentions

Employer argues the WCJ and the Board erred in awarding Claimant indemnity benefits. It asserts that, because the controlling document was a medical-only NCP, Claimant was required to prove all of the elements of his claim petition, including his allegation that he sustained a disability as a result of the work injury. Employer contends Claimant failed to do so. It maintains neither of Claimant's medical experts opined that Claimant was unable to work in the *modified job* in which he worked for three months after the injury. Instead, Employer argues, Claimant admitted he decided, on his own, to take himself out of work. Employer asserts the WCJ erred in disregarding Claimant's admissions.

---

[3] After filing its petition for review, Employer filed a petition for supersedeas pending its appeal, which was denied.

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

9

Employer further contends the WCJ and the Board erred in shifting the burden to Employer to show work was available after Employer terminated Claimant's employment, despite the fact that the evidence shows Claimant made the decision to voluntarily quit the modified job before Employer terminated his employment.

Employer maintains there is no substantial, competent evidence to support a finding that Claimant sustained a disability as a result of the work injury; thus, Claimant is not entitled to indemnity benefits related to the work injury.

Claimant responds that, in its appeal to the Board, Employer did not assert that the WCJ misapplied the burden of proof. As a result, Claimant asserts Employer waived that issue.

In any event, Claimant contends, the WCJ accepted Claimant's testimony as to the origin of his back injury and increasing inability over the next several months to perform modified light duty work. Claimant maintains the WCJ also accepted the testimony of Claimant's Orthopedist and Claimant's Physiatrist and expressly rejected the testimony of Employer's Physician. Thus, Claimant argues he sustained his burden of proving an entitlement to indemnity benefits.

**B. Analysis**

It is solely for the WCJ, as fact-finder, to assess credibility and resolve evidentiary conflicts. Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.), 134 A.3d 1156 (Pa. Cmwlth. 2016). Thus, the WCJ may accept or

10

reject the testimony of any witness, in whole or in part, including that of a medical witness. Id. Further, this Court views the evidence in a light most favorable to the party who prevailed before the WCJ. Id. Additionally, we draw all reasonable inferences deducible from the evidence in support of the WCJ's decision in favor of the prevailing party. Id. It does not matter whether there is record evidence that supports findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings. Id.

In a claim petition proceeding, the claimant bears the burden of proving all of the elements necessary to support a WCJ's award of compensation, including the duration and extent of the disability alleged. Second Breath. "Where there is no obvious causal connection between the injury and the alleged work-related cause," the claimant must establish the causal connection by unequivocal medical evidence in order to recover. Rocco v. Workers' Comp. Appeal Bd. (Parkside Realty Constr.), 725 A.2d 239, 243 (Pa. Cmwlth. 1999).

More important for resolving this case, "[w]here a claimant establishes that a work-related injury prevents a return to the time-of-injury job, a loss of earnings capacity is established." Vista Int'l Hotel, 742 A.2d at 657. Once such a loss is demonstrated, the claimant should generally be entitled to benefits, unless the employer can show employment is available within the claimant's restrictions. Id. "[A]s a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity." Id.

11

Thus, where an employer alleges that a claimant's loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of proof. Second Breath. "The employer must prove that suitable work was available or would have been available but for the circumstances which merit allocation of the consequences of the discharge to the claimant, such as the claimant's lack of good faith." Id. at 900 (citing Vista Int'l Hotel) (footnote omitted). Moreover, the WCJ, as fact-finder, determines whether a claimant was discharged for conduct evidencing a lack of good faith. Id.

At the outset, our review of the record reveals that, in its appeal to the Board, Employer did not assert that the WCJ erred in misapplying the burden of proof here. Reproduced Record (R.R.) at 224a-28a. Therefore, this issue is waived. Second Breath. Regardless of waiver, however, we discern no error in the WCJ's application of the burden of proof.

To that end, the WCJ determined that Claimant met his burden of proving entitlement to ongoing indemnity benefits beginning December 8, 2014, the date Employer terminated Claimant's employment. Specifically, the WCJ found Claimant was totally disabled from his *time of injury* position at the time Employer terminated his employment. F.F. No. 7(a), (d). These findings are supported by the credible testimony of Claimant's Orthopedist and Claimant's Physiatrist. R.R. at 56a-57a; 141a-42a.

Further, the WCJ's supported findings reveal that, although Employer initially provided Claimant with modified duty work, when Claimant returned to

12

modified work, he experienced increased pain as a result of the work injury, sought treatment at the emergency room, and was told to remain off work until he could secure treatment through pain management. F.F. No. 7(d); R.R. at 26a-28a. The WCJ's supported findings also reveal that Claimant notified Employer of these circumstances, and Employer removed Claimant from its schedule and terminated his employment based on a "no call off/no show." F.F. No. 7(d); R.R. at 28a. Employer presented no evidence to contradict Claimant's testimony that he notified Employer he would not report to work because of the work injury. F.F. No. 7(d). As a result, the WCJ determined Employer terminated Claimant's employment without cause, and, therefore, there was no modified work available to Claimant after his termination from employment on December 8, 2014. Id. No error is apparent in this regard. Second Breath.

Employer relies on other portions of Claimant's testimony, which it claims support findings that differ from those made by the WCJ. As set forth above, however, the WCJ was free to accept Claimant's testimony in part. Edwards. Moreover, contrary to Employer's assertions, it is irrelevant whether the record supports findings other than those made by the WCJ; the pertinent inquiry is whether the evidence supports the findings actually made, which, as set forth above, it does. Id. Viewing the evidence in a light most favorable to Claimant, who prevailed before the WCJ, and drawing all reasonable inferences from the evidence in Claimant's favor, as we must, id., the record amply supports the WCJ's findings.

13

In sum, because the record supports the WCJ's findings and the WCJ's ultimate determinations comport with the law, we affirm.

_____
ROBERT SIMPSON, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heartland Employment Services, LLC, :
                  Petitioner :
                              :
          v. : No. 1137 C.D. 2018
                              :
Workers' Compensation Appeal :
Board (Toth), :
                  Respondent :

# **O R D E R**

**AND NOW**, this 14th day of February, 2019, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge